IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LORILLARD TOBACCO CO., and<br>LORILLARD LICENSING CO. L.L.C.,<br>　　　　　　　　　　　　　Plaintiffs.<br><br>　　　　　　v.<br><br>S&M BRANDS, INC.,<br>　　　　　　　　　　　　　Defendant. | Civil Action Number 3:09CV124 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiffs's Motion for a Preliminary Injunction (Doc. No. 4) to enjoin Defendant S&M Brands, Inc., and all persons acting in concert with Defendant, from using or infringing Lorillard's NEWPORT Marks, falsely designating the origin or affiliation of Defendant's Bailey's brand of cigarettes in relation to the NEWPORT brand, and from otherwise unfairly competing with Lorillard.  For the reasons below, this Court GRANTS IN PART and DENIES IN PART Plaintiffs's Motion for a Preliminary Injunction.

### **I. Background**

Lorillard Tobacco Company ("Lorillard") and S&M Brands, Inc. ("S&M Brands") are in the business of making and marketing cigarettes in the United States.  Founded in 1760, Lorillard is the third largest tobacco company in the nation, and manufactures and sells numerous brands of cigarettes, including NEWPORT cigarettes.  S&M Brands was founded in 1994 by the Bailey family of Lunenburg, Virginia.  The company manufactures Bailey's brand of cigarettes, which are sold in regular and menthol varieties throughout the Southeast.  The Bailey's brand is positioned in the market at a price slightly under the

1

premium offerings of the major tobacco companies. As such, Bailey's brand of cigarettes competes with the NEWPORT brand.

<u>The NEWPORT Brand</u>

NEWPORT cigarettes were introduced to the market in 1956; since this date, Lorillard has invested a substantial amount of time, effort, and money in advertising and promoting cigarettes under this brand. These advertisements include print media, point of sale advertising and displays, and direct mail marketing to consumers. To protect the NEWPORT brand, Lorillard registered the name in trademark, Registration No. 1,108,876, on December 12, 1978 with the United States Patent and Trademark Office ("PTO"). This trademark became incontestable in 1983.

A hallmark of the NEWPORT brand's advertising is the use of the word "Newport" in a stylized Cooper font ("NEWPORT Stylized Mark"). Since the early 1980s, all point of sale advertising for the NEWPORT brand has featured the NEWPORT Stylized Mark in a copper or orange color on a green background. These advertisements frequently depict the word "Newport" partially obscured by an image in the advertisement. Lorillard now challenges S&M Brands's use of this distinct mark on two large posters displayed outside of Jay's Food Mart in Southern Pines, North Carolina ("initial ads"), and in Bailey's planned advertising ("planned ads"), which attempts to compare the NEWPORT and Bailey's brand of cigarettes. Specifically, Lorillard alleges that S&M Brands's use of the NEWPORT trademarks violate sections 32 and 43 of the Lanham Act, and the initial ads violate the North Carolina Unfair and Deceptive Trade Practices Act.

<u>The Initial Ads</u>

On February 17, 2009, Tina King, a Lorillard Sales Representative, was driving past Jay's Food Mart and noticed a large cigarette advertisement. Both NEWPORT and Bailey's brand cigarettes are sold at this location, and both companies promote their brand here through advertising posters and point of sale displays. On the exterior wall of Jay's Food Mart was a large advertisement for Bailey's cigarettes with what appears to be a portion of the word "Newport" in Lorillard's custom font and orange coloring. (<u>See</u> Lorillard's Mot. for Prelim. Inj., Ex. C.) The word is partially obscured by an image in the advertisement, similar to the manner in which Lorillard uses the NEWPORT Stylized Mark. The lower left corner of the advertisement included a sentence stating "Newport is a registered trademark of Lorillard Licensing Co., LLC." (<u>Id</u>.) This "disclaimer" is written in a minuscule font, rendering it virtually invisible to the reader. The poster was one of two advertisements that S&M Brands publicly displayed in North Carolina. Ms. King has not seen any other advertisements utilizing the NEWPORT trademarks in her sales territory.

On February 19, 2009, Harry C. Marcus, Lorillard's intellectual property counsel, sent a cease and desist letter to S&M Brands. On February 24th, Everett W. Gee, III, Vice President of Legal Affairs and General Counsel for S&M Brands, sent a response letter wherein he refers to the initial ads as S&M Brands's "good faith intent to" compete with Lorillard. (Def.'s Resp. to Mot. for Prelim. Inj., Ex. B.) Mr. Gee ended the letter stating that if Lorillard seeks to have a court resolve the issue, S&M Brands would defend the matter and live by the court's decision. (<u>Id</u>.) Accordingly, Lorillard filed a complaint alleging trademark infringement, counterfeiting, unfair competition, and deceptive

practices in conjunction with these advertisements on March 3, 2009. The same day, Lorillard requested a temporary restraining order to enjoin S&M Brands's use of the challenged advertisements. The parties negotiated, in a Stipulated Temporary Restraining Order ("TRO"), to have S&M Brands remove all of the initial ads by March 6, 2009. Pursuant to this Agreement, the TRO was to last for twenty days, until the Court could hear Lorillard's Motion for a Preliminary Injunction.

<u>Planned Ads</u>

In defending this matter, S&M Brands unveiled their planned advertising campaign, which attempts to compare the NEWPORT and Bailey's brand of cigarettes. The new campaign consists of eight advertisements that prominently display the NEWPORT Stylized Mark, partially obscured by an image in the advertisement, and text stating Bailey's price point and use of natural menthol in its cigarettes. In contrast to the initial ads, the following text is prominently displayed on the planned ads: "Compare Bailey's to our competitor Newport Cigarettes." (Def.'s Resp. Br. 1; <u>see also id.</u>, Ex. C.) Additionally, S&M Brands attributes the use of the Newport trademark to Lorillard Licensing Co., in the same minuscule font as the initial ads. This advertising campaign consists of point of sale advertisements ranging in size from three inches by twelve inches to as large as 34.5 inches by 46 inches. As a result of this advertising campaign, which Defendant contends poses no probable risk of consumer confusion, the limited use of the initial ads, and the fact that all of the initial ads have been removed, Defendant now contends that the issue of a preliminary injunction is moot. Plaintiff disagrees.

## II. S&M Brand's Claim of Mootness

In opposition to Plaintiffs's Motion for a Preliminary Injunction, Defendant states this Court should deny the Motion on the grounds that S&M Brands's use of the initial ads was due to a mistake at the printers, the initial ads have been taken down, and the company has revised its advertising campaign and the planned ads do not pose, as a matter of law, any probable risk of consumer confusion.  While these arguments are repeatedly stated throughout Defendant's responsive brief, this is the full extent of Defendant's argument that the case is moot.  As Defendant has chosen not to address this issue in depth, this Court too will only briefly address the issue of mootness.  In doing so, the Court finds that this case is not moot.

A case is moot when the issues presented before the Court are no longer "live," or the parties lack a cognizable interest in the outcome.  Powell v. McCormack, 395 U.S. 486, 496 (1969).  However, a party's mere voluntary cessation of offending conduct does not automatically moot a case, or deprive a federal court of its power to determine the legality of the challenged conduct.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).  Accordingly, to prevent a party from evading judgment at will, the Supreme Court has narrowly defined a situation where a party's voluntary cessation moots an issue.  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Id.  Further, the party alleging mootness bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur.  Here, S&M Brands has not met this heavy burden.

Merely stating that the company has removed the initial ads and created a new advertising campaign is not sufficient to moot this case.  Rather, the tone and content of Defendant's response to Lorillard's cease and desist letter suggests that although the initial ads were removed, Defendant still challenges whether the ads infringed upon Lorillard's trademarks.  (Def.'s Resp. to Mot. for Prelim. Inj., Ex B (stating that the ads demonstrated S&M Brands's good faith intent to compete with Lorillard); id. ("However, if you have evidence of actual consumer confusion or credible likelihood thereof, we certainly would consider this evidence in good faith to evaluate our obligations under the law.  We admire the Lorillard company as it has achieved great market success, but we will not be intimidated into failing to compete.").)  As such, Defendant's mere assurance that the case is moot does not, in fact, moot the case, and as there remains a dispute as to whether S&M Brands's initial ads or planned ads infringe on Lorillard's trademarks, this Court will decide the case on its merits.

### III.  Preliminary Injunction on Initial Ads

A preliminary injunction is "an extraordinary remedy," one "to be granted only sparingly."  In re Microsoft Litig., 333 F.3d 517, 524 (4th Cir. 2003).  It "maintains a particular relationship between the parties" to a case before it is decided on its merits. United States Dept. of Labor v. Wolf Run Mining Co., 452 F.3d 275, 280 (4th Cir. 2006). Accordingly, whether a preliminary injunction is warranted depends on the relative effect on the parties of maintaining the status quo, as well as the public interest in doing so.  Id.

A court deciding whether to issue a preliminary injunction must weigh four factors: (1) the likelihood of irreparable harm to the plaintiff if its request for relief is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood

that the plaintiff will succeed on the merits of its claim; and (4) the public interest. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977); accord Wolf Run Mining Co., 452 F.3d at 280.  Prior to the United States Supreme Court's decision in Munaf, et al. v. Geren, 555 U.S. __ (2008), the federal Courts of Appeals took differing approaches as to the order of analysis and weight of these factors. In the Fourth Circuit, the standard is set out in Blackwelder.  550 F.2d at 189.

In Blackwelder, the Fourth Circuit declared that a court deciding whether to grant a preliminary injunction must first compare the likelihood of irreparable harm to the plaintiff to the likelihood of harm to the defendant and if "a decided balance of hardship" in the plaintiff's favor results, then a preliminary injunction is warranted if the plaintiff's claims involve serious, difficult questions.  Id. at 195.  Although the Fourth Circuit has adopted this approach, it has cautioned that focusing on the "balancing of harms" test may be contrary to Supreme Court precedent.  See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 n.2 (4th Cir. 2002) ("Blackwelder's emphasis on the balancing of the harms rather than the likelihood of success has been criticized, even within this court, as inconsistent with Supreme Court precedent.")  While the recent decision in Munaf does not directly address the weight of the four factors, the Supreme Court has reiterated that "a party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'"  553 U.S. at ____ (slip op., at 12).  Accordingly, this Court will also address the likelihood that Plaintiff will succeed on the merits.

Here, Defendant spends the majority of its Response to Plaintiffs's Motion asserting that S&M Brands's planned advertising campaign does not infringe on Lorillard's trademarks, and therefore Defendant has implicitly chosen not to defend

7

against the initial ads brought before this Court. Nevertheless, Plaintiffs must demonstrate that a preliminary injunction is warranted based on S&M Brands's initial ads, a standard Plaintiffs have clearly met.

### A. Balance of Harms

In Lanham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case. Scotts Co., 315 F.3d at 273 (citing Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2nd Cir. 1997) ("In the context of trademark and unfair competition injunctions, the requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion (a requirement of both trademark infringement and unfair competition claims) establishes irreparable harm.")). To determine whether a likelihood of confusion exists, courts consider: (1) the strength or distinctiveness of the mark, (2) the similarity of the two marks, (3) the similarity of the goods/services the marks identify, (4) the similarity of the facilities the two parties use in their businesses, (5) the similarity of the advertising used by the parties, (6) the defendant's intent, and (7) any evidence of actual confusion. Though all relevant factors should be considered, they need not be emphasized equally. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984); see also Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463–64 (4th Cir. 1996) (internal citations omitted) (noting that other factors relevant to analyzing the likelihood of confusion may be considered, "such as (8) the quality of the defendant's product, and (9) the sophistication of the consuming public.").

Here, Lorillard has made a clear showing of irreparable harm as S&M Brands's initial ads have the potential for creating confusion in the marketplace. Specifically, (1) the initial ads use of the NEWPORT Stylized Mark on a green background partially obscured by an image on the advertisement—similar to the manner in which Lorillard uses the Mark—will likely place in the mind of consumers an incorrect affiliation between the NEWPORT brand and Bailey's brand of cigarettes; (2) the challenged advertisements market menthol cigarettes to the same consumer as the NEWPORT brand, using the same type of advertising, in the same marketing channels, and therefore the likelihood of confusion from the use of the NEWPORT Stylized Mark, without some clear, unambiguous distinction, is probable; and (3) S&M Brands's inordinately small "disclaimer" stating that Lorillard is the owner of the NEWPORT brand does not clarify the relationship between NEWPORT and Bailey's brand of cigarettes, but due to the size and wording, may further mislead consumers into believing there is an affiliation between the two brands. Accordingly, the Court holds that Plaintiffs have demonstrated a likelihood of confusion, and therefore this Court will presume Lorillard will suffer irreparable harm if the advertisements are allowed to remain or Defendant is not enjoined from their use.

S&M Brands does not refute this presumption nor does Defendant address the balance of harms as they relate to the initial ads, but rather notes these ads have been removed, and will be replaced with a new advertising campaign. As Defendant's mere recitation that a new advertising campaign is forthcoming does not diminish the likelihood that Plaintiffs will be irreparably harmed if the initial ads are not enjoined, this Court holds that the balancing of harms decidedly tips in favor of Lorillard.

**B. Likelihood of Success on the Merits**

Plaintiffs's Complaint alleges four claims under sections 32 and 43(a) of the Lanham Act, and one state law claim of unfair competition.  Namely, Plaintiffs claim that Defendant: (1) infringed Lorillard's NEWPORT registered trademark, (2) engaged in unlawful counterfeiting practices, (3) violated federal unfair competition laws designed to prevent confusion, mistake, or deception in commercial advertising and promotions, (4) participated in marketing activities that causes dilution of the NEWPORT Marks, and (5) violated North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. 75-1.1(a).  In order to prevail on claims of trademark infringement under the Lanham Act, a plaintiff must prove that: (1) it owns the trademark, (2) the defendant used the trademark, (3) the use occurred in commerce, (4) the defendant used the trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services, and (5) the defendant used the trademark in a manner likely to confuse customers.  Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005).

Here, Plaintiffs have shown they will likely succeed on the merits.  It is undisputed that Lorillard has owned the NEWPORT trademark since December 12, 1978, and the mark became incontestable in 1983.  It is further uncontested that Defendant used this trademark in commerce, as the NEWPORT Stylized Mark was placed on S&M Brands's advertising in conjunction with the sale of Bailey's brand of cigarettes.  Moreover, as noted above, S&M Brands's initial advertising will likely result in confusion in the marketplace, a key component of each claim under the Lanham Act, and the principle of North Carolina's Unfair and Deceptive Trade Practices Act.  Though Plaintiffs have appeared to meet their

burden of likelihood of success, the Court must also address the law of statutory (classic) and nominative fair use.

The statutory (classic) fair use defense recognized under the Lanham Act allows "the use of [a] name, term, or device charged to be an infringement, otherwise than as a mark, . . . [if it is] used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4); see also Dayton Progress Corp. v. Lane Punch Corp., 917 F.2d 836, 840 (4th Cir. 1990) (distilling the elements of fair use down to the defendant showing: (1) it used the mark fairly and in good faith, (2) only to describe its goods or services, and (3) that the infringing mark is not used as a trademark). Accordingly, this statutory defense allows an alleged infringer to use a registered term in good faith when describing their own goods or services. As Plaintiffs claim S&M Brands's use of the NEWPORT Marks is not to describe the Bailey's brand of cigarettes but the NEWPORT brand, this statutory fair use defense is inapplicable. Rather, the evolved common law understanding of "nominative fair use" may stand as a more appropriate form of defense.

Nominative fair use falls outside of the typical statutory understanding of trademark law, and is a common law defense asserted against alleged trademark infringement—though not used in this Circuit. See Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 218 (3d Cir. 2005) (applying nominative use as an affirmative defense to allegations that a party's use of a trademarked term was likely to confuse consumers); New Kids on the Block v. News America Pub., Inc., 971 F.2d 302, 306–07 (9th Cir. 1992) (identifying a three part test to determine whether a party's use can be considered nominative). In general, nominative use is the practice of referring to

another's mark to help describe one's own product or service. Maurag, Inc. v. Bertuglia, 494 F. Supp. 2d 395, 398 n.3 (E.D. Va. 2007) (J. Kelley). Under the Ninth Circuit's New Kids on the Block test, a user is entitled to a nominative fair use defense if: (1) the product or service in question is one not readily identifiable without the use of the trademark, (2) the use of the mark or marks is only so much as is reasonably necessary to identify the product or service, and (3) the user does not do anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. 971 F.2d at 308. While the Third Circuit and Ninth Circuit apply this standard differently, the Fourth Circuit has not adopted it in any form. National Fed'n of the Blind v. Loompanics Enters., 936 F. Supp. 1232, 1241 (D. Md. 1996) ("Because the New Kids test is not the law of this Circuit, and because neither the statute nor Fourth Circuit case law portend its adoption, I decline to follow it."). This Court, therefore, will not either. Accordingly, no statutory or common law defense exists to Defendant's alleged infringement, and as such, Plaintiff is likely to succeed on the merits.

### C. The Public's Interest

The expansive policy considerations behind Congress's adoption of the Lanham Act, and the intent of the North Carolina Legislature in passing the Unfair and Deceptive Trade Practices Act, evidences the wide public interest in fair competition and avoiding confusion in the marketplace. Here, Defendant's conduct is likely to cause confusion between the NEWPORT and Bailey's brand of cigarettes. As the public interest favors fair competition and truth in advertising, the public's interest here favors granting the injunction on the initial ads.

Because Plaintiffs have shown that a preliminary injunction is warranted, Plaintiffs's Motion is GRANTED as to the initial ads.

### IV. Preliminary Injunction on Planned Advertisements

Defendant has presented eight planned ads that attempt to compare the NEWPORT and Bailey's brand of cigarettes by using the NEWPORT Stylized Mark; as a result, Plaintiff requests this Court enjoin Defendant's use of these ads as they allegedly infringe on Lorillard's trademarks. In contrast, Defendant argues that these comparative ads do not pose, as a matter of law, any probable risk of consumer confusion, and therefore the injunction should be denied. This Court agrees.

As a threshold matter, this Court notes that planned advertising campaigns may typically fall outside of this Court's jurisdiction, as not presenting a case or controversy for which the court can resolve. However, as is the case here, Defendant's pre-printed advertisements, and assurances that the new advertising campaign will be released shortly, presents a live controversy and potential imminent injury, of which this Court will address, albeit briefly. (See Mots. Hr'g Tr., Apr. 14, 2009.)

This Court has noted, with more specificity above, the content of S&M Brands's new advertising campaign. While these planned ads are similar to the initial ads, one marked difference helps to refute Plaintiffs's claim that consumers will likely be confused as to the sponsorship and affiliation of the two brands—the planned ads contain large, unambiguous language directing consumers to "Compare Bailey's to our Competitor Newport Cigarettes." (Def.'s Resp. Br. 1.) Accordingly, this Court is not persuaded that this text and the use of the NEWPORT Stylized Mark are likely to cause confusion as to the affiliation of the brands. Rather, the text clearly encourages consumers to make a choice

and compare two, obviously competing brands. In this aspect, the advertisement's use of the word "compare" serves as a form of disclaimer to guard against brand confusion, rather than inviting it. Moreover, as this Court finds that Plaintiffs have not met their burden of showing a likelihood of confusion, this Court need not address the other elements of trademark infringement, or its statutory defense. Accordingly, Plaintiffs's Motion as to the planned ads is DENIED.

## V. Conclusion

For the reasons stated above, this Court GRANTS Plaintiffs's Motion for a Preliminary Injunction on the initial ads, as Plaintiffs have demonstrated that they are likely to succeed on the merits, and that they would be irreparably harmed if an injunction is not granted in this matter. Further, this Court DENIES Plaintiffs's Motion for a Preliminary Injunction on the planned ads, as Plaintiffs have not met their burden of showing a likelihood of confusion.

It is SO ORDERED.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

Entered this  13th  day of May 2009